363 So.2d 362 (1978)
Willie McCANTS, Appellant,
v.
STATE of Florida, Appellee.
No. HH-217.
District Court of Appeal of Florida, First District.
September 21, 1978.
Rehearing denied November 7, 1978.
*363 Michael J. Minerva, Public Defender, and Janice G. Scott, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
BOOTH, Judge.
This cause is before us on appeal from the judgment of the Circuit Court, Escambia County, adjudicating appellant guilty of two counts of sale of heroin and sentencing him to five years imprisonment on each count, with sentences to run concurrently.
The sole question presented is the correctness of the trial court's ruling denying disclosure of the confidential informer. This ruling was made at the close of the hearing on appellant's motion for disclosure. Testimony at that hearing established that the informer met Officer George Washington, an undercover officer on loan from Mobile, Alabama, City Police Department; that Officer Gray directed the informer to ride with Officer Washington, who was unfamiliar with Pensacola, for the purpose of pointing out locations in the city as well as suspected drug dealers, including the defendant; that the informer was advised not to participate in any manner or form in the transaction but that if necessary he could be present in the car and that he should avoid seeing the drug buy. Officer Gray also testified that he had used this informer many times before; that he had participated in twenty-six to thirty cases for the Drug Task Force and was still working with them, having made contact with Gray on the very morning of the disclosure hearing. Concerning the danger to the informant from disclosure of his identity, Officer Gray testified: "He would have to leave town or be killed, I would say, within a week ...", and that the case against appellant would be nolle prossed if the informant's name had to be mentioned.
Defense counsel, on the other hand, made the following argument as the basis for requiring disclosure:
"My argument is this man was present when a buy went down. The only evidence against my defendant is the word of George Washington. I think my defendant has the right to examine anybody who has information relevant to the offense. Mr. Gray didn't have to place this man in that position. They chose to do that and since they chose to do that, they have made him an essential witness in the case. For my man not to be able to examine him deprives us of an adequate defense."
The trial court heard the testimony at the hearing, ascertained that the State would not introduce any evidence obtained by, or testimony of, the confidential informer at trial and denied disclosure.
The case was tried to the court, without a jury. At trial Officer Gray testified that he described appellant to Officer Washington; that he told Washington the appellant would be at the Grand Hotel and would have quantities of heroin for sale. Officer Gray also described appellant's car, a 1965 Cadillac, burgundy in color with "superfly" figures stuck on it. Following these instructions, Officer Washington went to the Grand Hotel and recognized appellant from the description given him by Officer Gray. He found appellant, as described by Gray, in front of the Grand Hotel and noted that appellant "was going back and forth to different cars." Officer Washington also stated that he saw appellant's car, which Washington described as "a burgundy Cadillac all dressed down with a lot of wide whitewalls ..." in the vicinity of the hotel.
Officer Washington purchased heroin from appellant on two different occasions, February 18th and March 4, 1977, and plainly identified appellant at trial as the seller. The confidential informer was seated in the car, a fact stated during the testimony of both Gray and Washington, but did not participate in the purchases.
*364 In addition to the testimony of Gray and Washington the State presented witnesses who identified the substance purchased from appellant as heroin. The appellant then took the stand and denied that he sold heroin to Washington. He admitted that he owned a 1965 burgundy Cadillac, but stated that it was at his house on the days in question and that he hadn't driven it in six months. Appellant also admitted that he had been to the Grand Hotel but denied that he had done so frequently or on the occasions in question.
At no time during the hearing on disclosure did appellant or his counsel indicate to the court any line of defense, such as alibi or entrapment, to which the informer's testimony could be material. Once disclosure was denied, appellant seized the opportunity to testify at trial, denying that either he or his car was present at the Grand Hotel on the dates of the sales. On appeal, this testimony has been enlarged into the defense of "misidentification," in an effort to make the informer's disclosure material.
In Roviaro v. U.S., 353 U.S. 53 at 59, 77 S.Ct. 623 at 627, 1 L.Ed.2d 639 (1957), the court stated:
"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law ... The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law  enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."
In the instant case, no particular defense was raised by appellant which the trial court could have considered in weighing the possible significance of the informer's testimony. The informer's testimony was not used at trial nor was the informer, as in Roviaro v. U.S., supra, an active participant in the criminal occurrence. The individual who purchased the drugs from appellant was not the informer but Officer Washington, who testified at trial and was subject to cross-examination by appellant's counsel.
In Roviaro v. U.S., supra at 62, 77 S.Ct. at 628, the Supreme Court stated a balancing test to determine when fundamental fairness would require disclosure of the confidential informer, stating:
"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend upon the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (emphasis supplied)
In Treverrow v. State, 194 So.2d 250 (Fla. 1967), the Supreme Court of Florida emphasized the Roviaro requirement that consideration be given to "the possible significance of the informer's testimony" and listed a number of factors, stated in an earlier opinion of the District Court of Appeal, Second District, in Spataro v. State, 179 So.2d 873 (Fla. 2nd DCA 1965) and 76 A.L.R.2d at 262, for consideration by the trial court in determining whether an exception to the privilege of non-disclosure is to be allowed. The Treverrow case also states the rule as to the burden of the defendant in overcoming the privilege of non-disclosure, as follows (194 So.2d at 252):
"Clearly, since it is the State which has the privilege of non-disclosure [of confidential informer] the burden is upon the defendant claiming an exception to the rule to show why an exception should be invoked." (emphasis supplied)
The test for "materiality" of evidence required to be disclosed by the State in a criminal case is stated by the United States Supreme Court in U.S. v. Agurs, 427 U.S. 97 at 109, 112-113, 96 S.Ct. 2392 at 2400, 2401-02, 49 L.Ed.2d 342 (1976):

*365 "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense.
.....
The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial ..."
In State v. Sobel, 363 So.2d 324 (Fla. 1978), the Supreme Court, quoting from Agurs, supra, held the State's failure to produce a tape-recording made during the purchase by a confidential informer of illegal drugs from the defendant did not require reversal of the conviction for sale of those drugs. The Supreme Court noted that "the purpose of the discovery rule is to aid a defendant in the preparation of his case, not to give him a procedural escape hatch for the avoidance of prosecution."
The privilege of non-disclosure of a confidential informer is limited by the fundamental requirement of fairness to the person accused of the commission of a crime. The possible danger to the informer if disclosure is allowed, is an important factor to be considered and must be weighed against the materiality of the disclosure to the defense.[1] Thus, the trial court in ruling on appellant's motion for disclosure was required to weigh appellant's general assertion that he had a right to examine anyone with information relative to the offense as against the testimony given at the hearing that the informer's life would be in danger if his identity was revealed. Roviaro recognizes the importance of the trial court's function in "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense ..." In this case the trial court balanced those interests and found that the public interest in protecting the flow of information and the life of the confidential informer outweighed the claim of appellant to obtain such information as might result from disclosure of the informer's identity.
Accordingly, the judgment below is AFFIRMED.
MILLS, Acting C.J., concurs.
ERVIN, J., dissents.
ERVIN, Judge, dissenting.
The majority relies upon the contradictory testimony of Officer Washington at trial that his identification of appellant was based not upon information furnished to him by the informer, but rather from his recollection of the description provided by Officer Gray. The motion for disclosure, however, was made pre-trial, when, during the deposition of Officer Gray, the deponent refused to disclose the identity of a confidential informant. The deposition was adjourned temporarily and reconvened in the presence of the court for the purpose of complying with Fla.R.Crim.P. 3.220(j), which permits a party to apply to the court to enter such order as necessary to complete discovery. What Officers Gray and Washington may have later stated at trial was simply not appropriate to the argument made pre-trial that the identity of the confidential informer, based upon the record then before the court, should be disclosed. The point before us contends that the court erred in denying the motion to disclose. The circumstances surrounding the informant's responsibilities were described by Officer Gray during his pre-trial deposition as follows:
The informant met at the prearranged location with me and George Williams. *366 He was advised by myself as to what I wanted him to do. I made a list of names of people I knew were trafficing [sic] in heroin and I advised the confidential informant not to participate in any manner or form in the transaction. That if necessary he could be present, in the car, but if necessary to keep from even seeing the buy, to either look out of the window or step out of the car and go have a beer. The only thing I wanted him to do was to introduce George Washington to these persons and not to participate in any fashion in the transaction. (e.s.)
Clearly then the informant was instructed to participate minimally in the transaction by introducing the appellant to Officer Washington. Officer Washington testified, previous to Gray, on deposition that he had received a description of appellant from Gray, and when he went to the vicinity where he was advised appellant would be, the following occurred:
A... . the informant advised me that this was the subject we were looking for, Willie McCants. I called Willie McCants over to the car.
Q. The informant advised McCants that you were looking for him?
A. No, the informant told me that was McCants 
Q. Oh, okay.
A.  standing in front of the Grand Hotel.
Q. All right.
A. I called him to the car, to the vehicle, ...
While Washington stated that Gray had previously shown him a photograph of appellant, his deposition testimony was explicit that the informant advised him that the person on the street corner was appellant. However, there was additional participation by the informant in that after Washington called appellant over to the car, according to Washington, appellant spoke first to the informant.
In my opinion the appellant clearly brought to the attention of the court the relevancy of the informant's testimony when he stated: "The only evidence against ... defendant is the word of George Washington." Only the informer could have corroborated appellant's testimony that he was not involved in the drug transactions on the two dates alleged, February 18 and March 4, 1977. The lower court conceded the relevancy of the confidential informant's testimony by stating:
I can understand this witness will undoubtedly have relevant information, but since the State doesn't intend to use him in trial, I don't think any constitutional rights are impaired. I hope not.
I think the defendant's motion adequately brought the defense of misidentification before the court. If disclosure of an informer's identity is relevant and helpful to the defense of an accused, or is essential to a fair determination of the cause, the state's privilege of non-disclosure must give way. State v. Hassberger, 350 So.2d 1, 2 (Fla. 1977); State v. Matney, 236 So.2d 166 (Fla. 1st DCA 1970). Unlike the facts in Hawkins v. State, 312 So.2d 229 (Fla. 1st DCA 1975), the informer's identity here was material in determining the guilt or innocence of defendant, who took the stand and denied his guilt. The following statement by the Fourth District Court of Appeal in Woods v. State, 355 So.2d 437, 439 (Fla. 4th DCA 1978), is instructive: "[H]ad the informant corroborated appellant's contention it may well have led to an acquittal." And, as in Woods, only the informant could have corroborated appellant's testimony that he was not involved in the drug transactions on the dates alleged.
Our Supreme Court has proposed the following criteria be considered in determining whether the privilege against disclosure should be accorded the state: (1) Whether it is necessary for the prosecutor to refer to the informer in the presentation of the case, or whether the informer's existence was first brought out on cross-examination by the defendant; (2) whether the informer was an active participant in the offense with which the defendant is charged or is a mere informer who supplies a lead; (3) whether the accused admits or does not deny guilt, and (4) whether there is independent *367 evidence of the accused's guilt. Treverrow v. State, 194 So.2d 250 (Fla. 1967).
Applying the above criteria to this case, the state referred to the confidential informant during its case in chief. The informant was present during all the criminal transactions with which appellant was charged, and in fact first pointed out appellant to the undercover agent prior to the sale. The informant was the person to whom appellant allegedly first spoke when he approached the automobile prior to the drug transaction. Moreover, during the trial, the appellant denied ever having sold any narcotics to Washington, or indeed, ever having seen Washington before. Other than Washington's testimony, there was no evidence linking appellant to the sales.
While the majority relies upon Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), which holds there should be a balancing of the public interest in protecting the flow of information against the individual's right to prepare his defense, it failed to cite the following caveat made by the court:
A further limitation of the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of the cause, the privilege must give way. 353 U.S. at 60-61, 77 S.Ct. at 628, 1 L.Ed.2d at 645.
The majority concludes from Roviaro that the public interest in protecting the flow of information and the life of the confidential informer outweighs the claim of appellant to obtain the identity of the informant. Under the facts of this case, I must respectfully disagree. Once relevancy of the information is apparent, then the privilege must give way. If the government elects not to disclose such information, then it should be prepared to face the possibility at some point in the prosecution of making the hard choice whether to go forward with its case and expose the identity of its informer, thereby jeopardizing his life, or refuse to do so, resulting in the case's dismissal. The defendant should not be hampered in the preparation of his defense by the government's decision not to disclose material evidence. In my view the conclusion reached by the majority achieves an imbalance favoring the prosecution.
I would reverse and remand for new trial with directions that the identity of the government's informer be disclosed to the defense.
NOTES
[1] See, 64 Journal Criminal Law and Criminology 56, 63 (1973).